# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOE A. CHILDRESS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-411-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Joe A. Childress requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whether the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show he does not retain the residual functional capacity (RFC) to perform his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work he can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born on January 1, 1961, and was 44 years old at the administrative hearing. He has a high school education and no past relevant work. The claimant alleges he has been disabled since June 20, 1991, because of a back disorder.

**Procedural History**

On August 16, 2004, the claimant filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The application was denied. After a hearing on October 6, 2005, ALJ Lantz McClain found that the claimant was not disabled in a decision dated May 8, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, he could lift and/or carry 20 pounds occasionally and ten pounds frequently, stand and/or walk with normal breaks at least six hours in an eight-hour workday, and sit with normal breaks at least six hours in an eight-hour workday. The ALJ further limited the claimant to only occasional bending and stooping (Tr. 16-17). He concluded that the claimant was not disabled because there was work in the regional and national economies he could perform, *e.g.*, cashier, cleaner, and assembler (Tr. 19).

**Review**

The claimant contends that the ALJ erred: (i) by improperly evaluating the medical evidence; (ii) by finding he had the RFC to perform substantial gainful activity; and, (iii) by improperly analyzing his credibility. In his first contention, the claimant argues that the ALJ improperly evaluated the opinions of his treating physician Dr. R.J. Helton, D.O. The Court finds this argument persuasive.

The record reveals that in 1999 Dr. Helton referred the claimant to Dr. Christopher Bouvette, M.D., because of back pain. The claimant had injured his back in a motor vehicle accident in 1980, and in 1991 he elected to undergo lumbar fusion surgery. He reported that the fusion was unsuccessful. The claimant also complained of numbness and tingling in the forearms. Examination revealed that straight leg raising produced back pain but with no radicular features. Lumbar range of motion was within normal functional limits. Dr. Bouvette concluded that the claimant had chronic low back pain and bilateral forearm numbness and tingling. He recommended the claimant be prescribed Relafen and begin physical therapy (Tr. 129-30). The claimant returned to Dr. Bouvette for a second examination and reportedly felt better from the medication and therapy. He described his pain as a six on a scale of ten. Dr. Bouvette noted an operative report from 1991 that the claimant underwent a lumbar fusion, but he indicated that the current X ray of the lumber spine showed no evidence of fusion at the L5-S1 level. Dr. Bouvette opined the claimant suffered from chronic low back pain with a history of previous discectomy and fusion at the L5-S1 level and postoperative nonunion. He indicated conservative management of the

claimant's condition should continue, but it was possible surgical review might be necessary to evaluate for re-exploration and fusion (Tr. 126-28).

The claimant was seen by Dr. Helton in January 2005. He complained of back pain and numbness and tingling in his hands and feet. The claimant described his back pain as a ten on a pain scale of ten. Dr. Helton noted he had checked the claimant's back in 1997. Examination revealed that the claimant had positive straight leg raising. Dr. Helton recommended the claimant undergo an X ray of the lumbar spine (Tr. 158). The claimant's X ray revealed no acute abnormality but there was "fairly marked" degenerative changes at L5-S1 (Tr. 159). Dr. Helton saw the claimant again in September 2005. The claimant continued to suffer from back pain and straight leg raising was positive (Tr. 157). After the claimant's examination, Dr. Helton completed a medical source statement evaluating the claimant's physical limitations. He determined the claimant could lift and/or carry less than ten pounds; stand and/or walk two hours in an eight-hour workday and continuously 15 to 20 minutes; and sit three hours in an eight-hour workday and continuously 15 to 20 minutes. The claimant was required to lie down during the day to manage his pain. He could occasionally stoop, reach, handle, finger, and feel but never climb, balance, kneel, crouch, or crawl. He had environmental restrictions including phobias to heights and an inability to tolerate heat. Dr. Helton based his findings on the claimant's back surgery in 1991, in addition to consideration of the claimant's pain, discomfort, and other subjective complaints (Tr. 155-56).

Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

Medical opinions from a non-treating physician are not entitled to the same deference as those of a treating physician. But the ALJ must determine the proper weight to give such opinions by considering the factors set forth in 20 C.F.R. § 416.927(d). *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [emphasis added], *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ rejected Dr. Helton's opinions, *i. e.*, the findings he made on the claimant's medical source statement, because: (i) he found there were no records prior to January 2005 to support the findings; and, (ii) he found that Dr. Helton's findings were based on the claimant's "relation of symptoms rather than objective signs." (Tr. 19). It was erroneous for the ALJ to reject Dr. Helton's opinions because they were based on the claimant's relation of symptoms; nothing in the medical source statement indicated that Dr. Helton's findings *were* in fact based solely on the claimant's subjective complaints. *See Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy.") [citation

omitted]. On the contrary, although his opinions included consideration of pain, discomfort, and other subjective complaints, Dr. Helton specifically noted that his opinions were based on the claimant's fusion surgery of L5-S1 in 1991 (Tr. 156).

The ALJ *did* find that there were no records prior to 2005 to support Dr. Helton's findings. Assuming *arguendo* that this was a sufficient reason for refusing to give Dr. Helton's findings treating physician treatment (or that Dr. Helton was *not* the claimant's treating physician), as discussed above the ALJ was nevertheless required to consider the proper weight to give his findings by considering the factors set forth in 20 C.F.R. § 416.927(d).[2] The ALJ erred in failing to do this.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis of Dr. Helton's opinions on the medical source statement. On remand, the ALJ should determine whether Dr. Helton was the claimant's treating physician, apply the appropriate standards to his opinions and determine what impact, if any, such reconsideration has on the claimant's ability to work.

---

[2] The claimant contends that Dr. Helton *was* his treating physician. He testified that Dr. Helton had been his treating physician for nearly 20 years (Tr. 180). The Commissioner argues that Dr. Helton should not be regarded as the claimant's treating physician simply because the claimant says he is. Inasmuch as the medical record reflects only that the claimant saw Dr. Helton in 1997, 1999 (when he referred the claimant to Dr. Bouvette), and 2005 (Tr. 126-30, 155-59), it was important for the ALJ to determine whether Dr. Helton was a treating physician in order to apply the appropriate standard to his findings. *See generally Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) ("A physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his] treating source."). The record does not reflect whether the ALJ made such a determination, and he should do so on remand.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 11th day of December, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**